1  William F. Abrams (Bar No. 88805)
2  Sanjeet K. Dutta (Bar No. 203463)
   Seth R. Sias (Bar No. 260674)
3  STEPTOE & JOHNSON LLP
   1891 Page Mill Road, Suite 200
4  Palo Alto, CA 94304
   Telephone: (650) 687-9500
5  Facsimile: (650) 687-9499
   wabrams@steptoe.com
6  sdutta@steptoe.com
   ssias@steptoe.com
7

8  D. Greg Durbin (Bar No. 81749)
   McCormick, Barstow, Sheppard, Wayte & Carruth LLP
9  7647 North Fresno Street
   Fresno, CA 93720
10 Telephone: (559) 433-1300
   Facsimile: (559) 433-2300
11 greg.durbin@mccormickbarstow.com

12 *Attorneys for Plaintiffs*

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

15                     **FRESNO DIVISION**

16  E. & J. GALLO WINERY, doing business as  )  Case No. 17-cv-469
    SAN JOAQUIN VALLEY CONCENTRATES;)
17  G3 ENTERPRISES, INC. doing business as    )
    DELAWARE G3 ENTERPRISES, INC.; and        )  **COMPLAINT FOR DAMAGES**
18  MCD TECHNOLOGIES INC.,                     )  **AND INJUNCTIVE RELIEF FOR**
                                               )  **TRADE SECRET**
19                                             )  **MISAPPROPRIATION, BREACH**
                                               )  **OF CONTRACT, UNFAIR**
20                 Plaintiffs,                 )  **COMPETITION**
                                               )
21         v.                                  )
                                               )  Complaint Filed: June 15, 2017
22  INSTITUUT VOOR LANDBOUW- EN                )
    VISSERIJONDERZOEK; EIGEN                   )  **DEMAND FOR JURY TRIAL**
23  VERMOGEN VH INSTITUUT VOOR                 )
    LANDBOUW- EN                               )
24  VISSERIJONDERZOEK; FLANDERS'               )
    FOOD; and DOES 1-10                        )
25                                             )
                                               )
26                 Defendants.                 )
                                               )
27                                             )
                                               )
28

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

Plaintiffs E. & J. Gallo Winery, doing business as San Joaquin Valley Concentrates; G3 Enterprises, Inc., doing business as Delaware G3 Enterprises, Inc.; and MCD Technologies Inc. (collectively, "Plaintiffs"), by and through their attorneys, hereby allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs spent many years and hundreds of thousands of dollars to develop the Refractance Window dryer ("refractance window dryer"), a superior machine for quickly and efficiently drying organic products such as fruits, vegetables and algae to make colorants and nutraceutical products without compromising the dried product's color, flavor or active ingredients.  In 2011, Defendants stole refractance window dryer technology from Plaintiffs, and then, in 2015, deceived Plaintiffs into qualifying the technology under European standards, enabling the Defendants to sell a competing commercial dryer in the European market. Accordingly, in this action for trade secret misappropriation, breach of contract, and unfair competition, Plaintiffs seek both damages and an injunction to prevent Defendants from continuing to profit from their theft and duplicity.

2.      Richard Magoon ("Magoon"), Karen Bolland ("Bolland") and Alan Whitefoot ("Whitefoot") developed Plaintiffs' dryer technology over the course of two decades. They called this technology "Refractance Window" or "RW" drying. Refractance window drying works by moving the product to be dried on a thin, plastic conveyor belt floating on hot water:



STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

COMPLAINT                                1                          Case No. 17-cv-469

1  The resulting dried product is a stable, crystalline solid that has a long shelf-life, is easy to

2  transport and yet retains much of the original product's color, flavor, and nutrients.

3  Refractance window drying is considerably more energy- and cost-efficient than

4  conventional forms of drying, such as freeze-drying or spray drying, while producing a

5  higher yield of product without any need for additives or preservatives.

6      3.     Magoon and Bolland researched, developed, manufactured, marketed and

7  sold refractance window dryer systems through their company, MCD Technologies Inc.

8  ("MCD"). Plaintiffs called their first dryers "RW dryers." Plaintiffs have continued to refine

9  the refractance window drying technology and currently sell a version of the refractance

10  window dryer known as a GW dryer.

11      4.     In or about 2011, defendants Instituut voor Landbouw- en Visserijonderzoek

12  and Eigen Vermogen VH Instituut voor Landbouw- en Visserijonderzoek (individually and

13  collectively, "ILVO") contacted MCD to express interest in purchasing one of MCD's

14  refractance window dryers. ILVO presented itself to MCD as a research institute, not a

15  commercial concern, and requested a demonstration of the refractance window dryer. After

16  the parties executed a non-disclosure agreement, MCD shared trade secrets, intellectual

17  property, and business information about refractance window drying technology with an

18  employee of ILVO in correspondence and over the course of a week-long visit by the ILVO

19  employee to MCD's facilities. This confidential information includes, but is not limited to,

20  trade secret information relating to how to assemble the refractance window dryer's belt,

21  the design of the exhaust system for evacuating water vapor produced during the drying

22  process, the design for recirculating water through the system, designs for belt sanitation,

23  system for dried product removal, system for liquid product feeding, and the design and

24  materials choices for the belt.

25      5.     The trade secrets alleged in paragraph 4 involve components and systems that

26  are different than those disclosed in Plaintiffs' patents, which are directed to the principles

27  of operation of refractance window drying including the use of conditioned air to accelerate

28

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

COMPLAINT                2             Case No. 17-cv-469

1  evaporation, and the use of refractance window drying to make food colorants with specific

2  compositions.

3       6.     Taken together, these individual trade secrets, intellectual property and

4  business information, combined with Plaintiffs' patented technology, create an additional,

5  compilation trade secret that revealed to ILVO how to design and build its commercial

6  refractance window dryer, ensure the serviceability, reliability, and efficiency of a

7  refractance window dryer, and prove that this technology could be successfully used to

8  generate dried organic products of higher quality than conventional dryers.

9       7.     ILVO did not purchase a refractance window dryer from MCD. Instead,

10 Plaintiffs are informed and believe that after visiting MCD, ILVO began developing a copy

11 of the refractance window dryer using the Plaintiffs' technology without paying for the

12 technology it stole as more fully alleged below.

13      8.     Plaintiff E. & J. Gallo Winery, doing business as San Joaquin Valley

14 Concentrates ("SJVC"), acquired MCD's refractance window dryer business in 2012. SJVC

15 licensed the refractance window dryer technology to plaintiff G3 Enterprises Inc., doing

16 business as Delaware G3 Enterprises Inc. ("G3"), which manufactures and sells

17 commercial GW Dryers based on MCD's refractance window dryer technology. SJVC in

18 turn uses commercial GW Dryers to produce natural food colorants.

19      9.     In 2015, ILVO contacted G3 and urged it to obtain an "Environmental

20 Technology Verification," or "ETV," a program developed by the European Commission

21 to verify the energy-efficiency of new, environmentally-friendly technologies, to facilitate

22 the technology's acceptance by the marketplace. ILVO assured G3 that it was not

23 developing a competing product, and in reliance on this assurance, G3 went ahead and

24 obtained the verification. G3, ILVO and the testing entity signed mutual nondisclosure

25 agreements to protect information acquired during the testing and prevent it from being

26 disclosed.

27      10.    In late 2016, armed with Plaintiffs' technology and the completed ETV,

28 ILVO publicly announced that it had produced a working prototype dryer, which it calls a

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

COMPLAINT                    3                    Case No. 17-cv-469

"Dry-on-Water" dryer, and that Constructie Spiessens NV, doing business as Spiessens Machinebouw ("Spiessens") would be the exclusive manufacturer of commercial "Dry-on-Water" dryers for ILVO.  On information and belief, under the Spiessens license, ILVO and Flanders' Foods (who collectively formed the Food Pilot joint venture that developed the Dry-on-Water dryer) receive royalties and possibly other consideration from Spiessens.  On information and belief, Spiessens has already approached a G3 customer and attempted to promote the sale of the Dry-on-Water product. Based on this conduct, Plaintiffs expect ILVO and Spiessens will continue trying to sell their copycat commercial dryers to Plaintiffs' current and potential future customers.

**THE PARTIES**

11.     Plaintiff E. & J. Gallo Winery, doing business as San Joaquin Valley Concentrates, is a leading provider of natural food coloring based in Fresno, California. E. & J. Gallo Winery is a corporation organized in 1942 and existing under the laws of the State of California. E. & J. Gallo Winery traces its history back even further, to 1933, when brothers Ernest and Julio Gallo first started producing wine in Modesto, California. Now the largest exporter of California wines, E. & J. Gallo Winery still calls Modesto its home, and maintains its principal place of business at 600 Yosemite Boulevard, Modesto, California 95354.

12.     Plaintiff G3 Enterprises Inc., doing business as Delaware G3 Enterprises Inc., was organized in 2003 under the laws of the State of Delaware. G3 provides a variety of integrated solutions and supply chain services to the beverage and agricultural industry, including the GW dryers. G3 is a separate and independent company owned by the Gallo Family. G3 maintains its principal place of business in Modesto at 502 East Whitmore Avenue, Modesto, California 95358.

13.     Plaintiff MCD Technologies Inc., was organized in 1998 under the laws of the State of Washington. In 2012, MCD sold substantially all its refractance window business related assets and intellectual property to SJVC. Thus, MCD's principal place of

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

1    business for its refractance window dryer business is now located at 5610 E. Olive Avenue,

2    Fresno, California 93727.

3        14.    Plaintiffs are informed and believe that ILVO is a conglomeration of two

4    entities. Defendant Instituut voor Landbouw- en Visserijonderzoek or the Institute for

5    Agricultural and Fisheries Research is an internal independent organization of the

6    Government of Flanders, funded by the Government of Flanders and staffed by

7    government personnel. As such, this entity is referred to as ILVO-VO, short for ILVO-

8    Vlaamse Overheid or ILVO-Flemish Government. ILVO-VO was organized in 1980 and

9    has the registered address of Boulevard Baudouin 30 Boîte 50, 1000 Brussels, Belgium.

10    ILVO-VO is an agency or instrumentality of Belgium, and as such is subject to suit under

11    the well-recognized commercial activity exception to foreign sovereign immunity embodied

12    in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, at least because ILVO-

13    VO waived its immunity by consenting to suit in this Court for any breach of the

14    nondisclosure agreement it signed with G3, and because ILVO-VO committed an act in the

15    United States related to commercial activity that directly affects the United States, namely,

16    the theft of Plaintiffs' trade secrets, intellectual property, and business information which

17    ILVO-VO used to develop and commercialize competing refractance window drying

18    technology and services.

19        15.    Plaintiffs are informed and believe that the second part of ILVO is defendant

20    Eigen Vermogen VH Instituut Voor Landbouw- en Visserijonderzoek or ILVO-EV. "EV" is

21    short for "Eigen Vermogen," or "Own Capital." ILVO-EV is privately funded, and

22    maintains a separate budget, governing committee, audit, and legally separate employees

23    from ILVO-VO. ILVO-EV was organized in 1997 under the laws of Belgium and has the

24    registered address of Burg. Van Gansbergehelaan 92 Boîte 1, 9820 Merelbeke, Belgium.

25    Because ILVO-EV is a private entity it is not entitled to sovereign immunity. Personal

26    jurisdiction over ILVO-EV exists in this Court because ILVO-EV consented to suit in this

27    Court for any breach of the nondisclosure agreement it signed with G3, and because it

28    purposefully availed itself of the privilege of conducting activities in California by stealing

and misusing trade secrets, intellectual property, and business information belonging to California companies, which it has used to develop competing technology. As used in this Complaint, ILVO means both ILVO-EV and ILVO-VO, jointly and severally.

16.     Plaintiffs are informed and believe that defendant Flanders' Food was organized in 2005 under the laws of Belgium and has the registered address of Rue de la Science 14, Boîte A, 1040 Brussels, Belgium. Personal jurisdiction over Flanders' Food exists in this Court at least because Flanders' Food purposefully availed itself of the privilege of conducting activities in California by misusing trade secrets, intellectual property, and business information belonging to California companies, which it has used to develop competing technology.  On information and belief, Flanders' Food and ILVO entered into a joint venture called the Food Pilot in which they used and continue to use Plaintiffs' trade secret and confidential information for the Dry-on-Water dryer.  On information and belief Flanders' Food funded ILVO's activities at MCD and received invoices from MCD relating to ILVO's activities.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Title 28, sections 1330, 1332, 1367, and 1605 of the United States Code.

18.     This Court has personal jurisdiction under Title 28, sections 1330(b) and 1605(a), and Federal Rules of Civil Procedure 4(k)(1)(A) and 4(k)(2).

19.     Venue lies in this district pursuant to Title 28, section 1391(b)(2) and (f)(1) of the United States Code, as well as, Eastern District Local Rule 120(d).

## FACTUAL BACKGROUND

**A.     Richard Magoon's Development of Refractance Window Drying**

20.     Drying or dehydrating processes have been used in the agri-business industry for decades to preserve organic products by providing microbial stability and reducing deteriorative chemical reactions, to facilitate storage and minimize transportation costs, and to concentrate natural flavors and colors for use as additives to other food products. Conventional methods for drying organic products are energy intensive, and expose the

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

1    product to high temperatures leading to oxidation and degradation of valuable color

2    pigments and nutritional compounds. Freeze drying, for example, removes water by

3    chilling the product and then repeatedly lowering the ambient air pressure to allow the

4    water in the product to sublimate. Freeze drying times range from 12 to 24 hours, and

5    require a significant amount of energy.  Spray drying, presently the primary method of

6    drying food ingredients, removes water by injecting atomized liquid product into a chamber

7    filled continuously with hot air at over 350°F. Spray drying occurs in seconds, but small

8    droplets are exposed to severe oxidation conditions. Conveyor belt drying, another

9    common method, removes water by blowing hot air (greater than 200°F) over and through

10   wet product applied to an open grid belt to remove moisture. Both spray dryers and belt

11   dryers are not energy efficient and expose products to elevated temperatures resulting in

12   severe degradation of product color and nutrients. Drum drying, another alternative

13   process, removes water by applying liquid product to the hot exterior surface of rotating

14   steel drum heated to temperatures ranging from 200°F to 300°F. Drum drying is also not

15   energy efficient and results in product degradation. Many of these conventional processes

16   present other challenges, such as requiring expensive machinery and parts or requiring

17   significant skill to operate and maintain.

18       21.    In the 1980s, Magoon began developing a new food drying technology he

19   called Refractance Window Drying. Magoon's first key insight was that conventional

20   drying processes were inefficient, in part, because they used just a single mode of heat

21   transfer to increase a product's temperature and thereby facilitate water evaporation, such

22   as hot air convection in the case of spray-drying and conveyor drying, or conduction in the

23   case of freeze or drum drying. Magoon realized that by placing pureed food on a thin film

24   that was transparent to infrared radiation  and then moving the film across the surface of

25   heated water he could employ up to four different modes of heat transfer simultaneously

26   conduction, convection, evaporation, and radiation as shown in the illustration below:

27

28

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

COMPLAINT                              7                         Case No. 17-cv-469





(a)



Carrot flakes from (a) a RW dryer and (b) a drum dryer

22.    The advantages of refractance window drying over conventional drying processes are substantial. Because of the high thermal efficiency brought about by using up to four modes of heat transfer, products can be dried in a matter of minutes, rather than the several hours necessary for successful freeze-drying. Refractance window drying is achieved by heating the water under the refractance window dryer belt to just under boiling temperature, unlike other dryers that required heating liquids or gasses to much higher temperatures. Because the wet product is exposed to open air, evaporative cooling can maintain product temperature in the 60°C –70°C range, lower than other dryers that heat products using convection or radiation to remove water. As a result of this highly efficient, rapid, and low-temperature drying, refractance window dryers are able to retain the color and flavor of dried food much better than conventional dryers. For similar reasons, food dried on refractance window dryers maintains more of its nutrients and active ingredients. Refractance window dryers also do not require special skills to operate and are much easier to maintain than freeze, spray, or drum dryers.

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

23.     In 1986, Magoon obtained a patent on this idea, United States Patent number 4,631,837 (the "'837 Patent"). The '837 patent is generally directed to a method of drying a product by placing it on an infrared transparent sheet and moving it across a body of water which is heated, as the following figures from the patent illustrate:



COMPLAINT                              9                          Case No. 17-cv-469

**B.     Commercializing Refractance Window Drying**

24.     Over the course of the next decade, Magoon set about refining his invention so that it could be successfully commercialized. Magoon teamed up with Bolland and Whitefoot to further advance his work on refractance window dryers. Together, they developed a number of additional components, methods, and processes to improve the performance of the refractance window dryer.

25.     Magoon, Bolland, and Whitefoot also performed extensive tests on their refractance window drying technology in order to evaluate: how quickly it could dry different products, thermal efficiency, retention of color and nutritional components, and

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

overall product yield. Tests on strawberry puree showed that virtually all moisture could be removed in five minutes or less. The refractance window dryer prototypes they constructed had thermal efficiencies ranging up to 77%, higher than virtually any conventional drying system, which typically operate at closer to 50% efficiency.

26.     In 1998, Magoon and Bolland incorporated plaintiff MCD Technologies Inc. in Tacoma, Washington, and sold refractance window dryers, under the name "RW Dryers"—the culmination of more than two decades of research and development, funded with their own money.

**C.     ILVO Learns MCD's Trade Secrets**

27.     In the summer of 2011, MCD was contacted by Researcher Domien De Paepe ("De Paepe") and Food Pilot Manager Katleen Coudijzer ("Coudijzer"), both of ILVO. De Paepe and Coudijzer said that ILVO, perhaps in conjunction with Vlaamse Instelling voor Technologisch Onderzoek or the Flemish Institute for Technological Research ("VITO"), a company that develops environmentally friendly technology, was interested in purchasing an RW Dryer. Before any confidential information was exchanged, MCD, ILVO, and VITO executed a nondisclosure agreement on June 13, 2011 (the "2011 NDA").

28.     The 2011 NDA prohibited the parties from using the confidential information of the other parties for any purpose other than the "project." The "project" was defined as "allowing [VITO/ILVO] to evaluate [their] interest in purchasing from MCD either: a) equipment using the drying, concentrating, and food processing methods and apparatus, or b) test or contract processing services." "Confidential information" was defined as:

> any and all tangible and intangible information, whether oral or in writing or in any other medium, relating to the finances, management, operations, products, or inventions of each Party, including, without limitation, any and all trade secrets, know-how, designs, concepts, formulations, ingredients, samples, processes, machines, processing, control and product performance information, data, manuals, supplier lists, customer lists, purchasing and sales records, marketing information, computer programs and computer databases, furnished to one Party by another Party, all information which relates to either Party's analysis of the Confidential Information, and all derivatives of the Confidential Information.

---

COMPLAINT                                    10                          Case No. 17-cv-469

The 2011 NDA prohibited the use of Confidential information for the development of a refractance window dryer, whether a pilot dryer or a commercial dryer.

29.     After the 2011 NDA was executed, MCD conducted a number of tests on different foods at ILVO's direction, including apples, pears, blueberries, blackberries, fruit smoothies, strawberries, yogurt, and leeks. MCD provided ILVO with detailed test results and shipped samples of the resulting dried products to ILVO.

30.     In or about August 2011, De Paepe visited MCD's Tacoma facility. There, Magoon showed him both a working pilot refractance window dryer and a commercial Model 1 RW Dryer that MCD maintained on site for demonstration purposes. MCD gave De Paepe detailed presentations on how the technology operated, answering every question that De Paepe asked because Magoon believed ILVO was a potential customer and he wanted to make the sale. In light of the 2011 NDA, Magoon trusted that De Paepe, ILVO, and VITO would not misuse any information he shared.

31.     After De Paepe returned to Belgium, Magoon sent ILVO a detailed proposal for building a custom Model 1 RW Dryer for their specific needs. ILVO requested a discount on MCD's usual price, and MCD sent a revised quote with a substantial reduction in price. Nonetheless, ILVO ultimately declined to purchase an RW Dryer.

**D.     SJVC Acquires MCD's Refractance Window Dryer Business**

32.     On February 29, 2012, SJVC purchased substantially all of MCD's assets, including all of the intellectual property, related to refractance window dryers. SJVC then licensed the manufacturing rights for the refractance window drying technology to G3.

33.     G3 rebranded the RW Dryer as a "GW Dryer," and worked with SJVC to further refine and enhance the refractance window drying technology. On June 28, 2012, SJVC employees Joseph Rossi ("Rossi") and Sundeep Kattamuri ("Kattamuri") applied for a patent on using refractance window drying to produce pigments from plant juice. The patent issued on July 29, 2014, as United States Patent number 8,719,907 (the " '907 patent").

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

34.   On March 17, 2014, Rossi, Magoon and G3 employee Steven J. Anderson submitted United States Patent Application number 14/217,103 (the " '103 application"), directed to a refractance window dryer with a manifold that injects conditioned air across the belt to improve evaporative efficiency, as illustrated in the following figure:



FIG. 4

35.   On October 16, 2014, Rossi and Kattamuri applied for a patent for natural colorants produced from refractance window dryer technology with higher color intensity and lower sugar content than the source fruit or vegetable.  United States Patent Application number 14/313,955 (the " '955 application"). The patent issued on April 9, 2017 as US Patent number 9,624,354 (the " '354 patent").

**E.   G3 Obtains Environmental Technology Verification for the Refractance Window Drying Technology at ILVO's Request**

36.   On September 10, 2014, Coudijzer, on behalf of Food Pilot (a Flanders' Food/ILVO joint venture), contacted G3, asking to learn more about refractance window drying technology. ILVO did not inform G3 of the prior contact or communications with MCD in 2014. Although G3 representatives were willing to talk to Coudijzer, a month later she informed them that budget cuts at ILVO required postponement of any discussions.

37.   On June 15, 2015, ILVO again contacted G3, this time through its employee Bart van Droogenbroeck ("Droogenbroeck"). Droogenbroeck stated that ILVO was always looking for interesting new food processing technologies and thought refractance window

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

drying was promising. Droogenbroeck asked whether G3 would be willing to submit to a process known as Environmental Technology Verification ("ETV"). ETV is a process developed by the European Commission to help new, environmentally friendly technologies penetrate the market. The Commission's website explains:

> The concept of the Environmental Technology Verification programme is to offer a verification procedure to cutting edge environmental technologies that may otherwise find it difficult to establish their environmental added value. The verification procedure allows for an independent assessment and validation of the manufacturer's claims on the performance and environmental benefits of their technology. The information produced by the verification is public and can be used to compare performance parameters and therefore becomes an extremely useful tool to convince third-parties of the merits of a technology, potentially enhancing its market value and acceptance.

http://ec.europa.eu/environment/ecoap/etv/about-etv_en.

38.     G3 asked Droogenbroeck why ILVO was interested in refractance window drying technology, and specifically whether ILVO had any plans to develop a commercial refractance window drying product. ILVO explained that they were a proponent of window drying technology and assured G3 that they had no interest beyond research and did not plan to develop a commercial refractance window dryer. ILVO also encouraged G3 that if they received the ETV, G3 would be able to sell its refractance window dryers in Europe with ILVO's endorsement of the technology. On information and belief, ILVO used the results of the ETV energy audit to find a commercial partner.  On information and belief, in the fall of 2016 Spiessens began to promote a commercial refractance window dryer on its website without geographic limits.

39.     Based on ILVO's assurances that it was not seeking to develop a competing product, G3 agreed to go ahead with the ETV process. Droogenbroeck introduced G3 to RINA Services S.p.A. ("RINA"), an Italian firm that specializes in this type of verification work. Over the next several months, the parties developed a testing procedure that would satisfy the requirements of the ETV standard.

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

40.     On November 9, 2015, ILVO and Flanders Food applied for a European trademark for "Dry-on-Water."  The European Union Trademark Office registered the trademark on May 27, 2016.

41.     In December 2015, before the tests were to be conducted, G3 executed a non-disclosure agreement with ILVO (the "2015 NDA"), as well as with RINA. The 2015 NDA prohibited the parties from using any confidential information they obtained except for the purposes of the "project." The "project" is defined as "allowing [ILVO] to perform an European Union . . . Environmental Technological [*sic*] Verification . . . ." The term "confidential information" is defined as:

> …any and all tangible and intangible information, whether oral or in writing or in any other medium, disclosed or made available by or on behalf of that Party (the "<u>Disclosing Party</u>") to the other Party (the "<u>Receiving Party</u>") or otherwise obtained by the Receiving Party or through the Disclosing Party. Confidential Information will include, without limitation, information relating to the finances, management, business, operations, products, services or inventions of the Disclosing Party and its affiliates or subsidiaries, including, without limitation, third party information that the Disclosing Party is obligated to treat as confidential. Confidential Information of the Disclosing Party will also include, without limitation, all information that relates to the Receiving Party's analysis of the Disclosing Party's Confidential Information, and all derivatives of the Disclosing Party's Confidential Information, whether developed by the Disclosing Party or the Receiving Party. G3 Confidential Information shall also include, without limitation, any user information provided or made available to Vendor through or in connection with a web site, whether hosted by Vendor, G3 or any third party . . .

The 2015 NDA states that any cause of action between the Parties may be brought only in a court having jurisdiction and venue in the Eastern District of California. The 2015 NDA further states that the terms of the 2015 NDA shall be governed by and construed in accordance with the laws of the State of California.

42.     In January 2016, RINA representatives traveled to G3's facilities to test the refractance window dryers. The tests were successful and in March 2016, G3 received its formal Statement of Verification from RINA.  In September 2016, Mr. Van Droogenbroeck signed the Statement of Verification that states "G3 Enterprises (G3) is the owner of the technology "GW Dryer" (formerly known as the Refractance Window® Dryer)." Despite the issuance of the Statement of Verification, ILVO never purchased a dryer from G3 nor

1   entered into a partnership with G3, to sell refractance window dryers in Europe.  Instead,

2   ILVO pursued and entered into a commercial relationship with Spiessens, claiming that it

3   developed the technology itself.

4   **F.    Plaintiffs Learn of ILVO's Misappropriation of Trade Secrets, Breach of**
       **Nondisclosure Agreements, and Unfair Competition—and of Spiessens'**
5       **Involvement**

6           43.     On or around January 2017, after the ETV process completed, Plaintiffs

7   learned that ILVO were secretly developing a competing dryer based on trade secrets,

8   intellectual property, and other business information it stole from the Plaintiffs. G3 first

9   uncovered this theft and breach when its employee, Elizabeth Meyer, found the Spiessens

10  website advertising the Dry-on-Water dryer and its license agreement with ILVO and

11  Flanders' Food.  ILVO did not inform Plaintiffs of its use of Plaintiffs' trade secrets,

12  confidential information, and breach of the 2011 and 2015 NDAs.

13          44.     Plaintiffs are informed and believe that ILVO developed its competing dryer,

14  which it has trademarked "Dry-on-Water," as part of a joint venture with Flanders' Food.

15  The joint venture is named "Food Pilot," which we are informed and believe is not a

16  separate legal entity. Plaintiffs are informed and believe that Flanders' Food contributes

17  funding to ILVO, Food Pilot, and specifically the Dry-On-Water dryer development at the

18  Food Pilot, which is a joint venture of ILVO and Flanders' Food.

19          45.     On or about August 26, 2016, ILVO and Flanders' Food signed an agreement

20  with Spiessens to commercialize the Dry-on-Water product at a public ceremony. Geert

21  Bourgeois, the Minister-President of Flanders, attended. A press release from ILVO on

22  September 7, 2016 reported on the signing and stated that the Dry-on-Water product was

23  developed by a team of scientists from ILVO, who after just four years of development had

24  produced a working prototype. **Exhibit 1** is a copy of this press release.

25          46.     Spiessens' website uses the following illustration of its Dry-on-Water system

26  which remarkably is the *same illustration* provided by G3 to RINA during the ETV process:

27

28

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

1
2
3
4
5
6
7
8
9
10



11  http://www.spiessens.be/en/product/dry-on-water-system/

12       47.    On October 11, 2016, ILVO posted to YouTube a video of its prototype

13  drying strawberry puree—the same ingredient used by Magoon in his early tests. The

14  prototype shown in the video is a plain copy of the pilot refractance window dryer that De

15  Paepe studied at MCD in 2011:

16
17
18
19
20



21
22
23
24
25
26
27
28

**G.   Plaintiffs' Trade Secrets Are Valuable and Have not Been Publicly Disclosed**

48.     Plaintiffs have at all times employed rigorous security measures to protect their trade secrets. MCD, when it operated its refractance window drying business, required its customers or any visitors to its facilities to sign non-disclosure agreements. SJVC and G3 likewise require anyone who enters their facilities or observes their refractance window dryers to sign nondisclosure agreements.  Plaintiffs require visitors to sign-in when entering their facilities, thus monitoring and controlling access to the refractance window dryers.

49.     Plaintiffs have not disclosed their trade secrets in any public documents, including their patents or published patent applications. The '837 and '748 patents are both directed to the fundamental refractance window drying concepts, namely, drying organic product by placing it on a transparent belt that is moved across heated water. The '907 patent and the '955 application are directed to producing colorants with particular compositions through the use of GW dryers using refractance window drying technology. The '103 application is directed to a refractance window dryer with improved airflow. The concepts and technologies disclosed in the patents are different from Plaintiffs' trade secrets which include, for example, how to assemble the refractance window dryer's belt, the design of the exhaust system for evacuating water vapor produced during the drying process, the design for recirculating water through the system, designs for belt sanitation, system for dried product removal, system for liquid product feeding, and the design and materials choices for the belt.

**FIRST CAUSE OF ACTION**

**(Trade Secret Misappropriation under California Civil Code sections 3426 et seq. against all Defendants)**

50.     Plaintiffs incorporate all of the above paragraphs as though set forth herein.

51.     To avoid the substantial time and expense required to research, develop, and design its own food drying device, ILVO, for the purpose of its Food Pilot joint venture with Flanders' Foods, used trade secrets it obtained from MCD by posing as a potential customer to recreate in just four years what it took MCD more than three decades to

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

perfect. Now ILVO is sharing these trade secrets with Spiessens so that they may bring to market a competing product. This includes, but is not limited to, trade secret information relating to how to assemble the refractance window dryer's belt, the design of the exhaust system for evacuating water vapor produced during the drying process, the design for recirculating water through the system, designs for belt sanitation, system for dried product removal, system for liquid product feeding, and the design and materials choices for the belt.

52.    In violation of Plaintiffs' rights, Defendants, and each of them, thus misappropriated and used, and continue to use, Plaintiffs' confidential, proprietary and trade secret information, knowing or having reason to know that the trade secrets were acquired by improper means.

53.    Plaintiffs are informed and believe that their trade secrets have been and are used in the ongoing development and commercialization of the Dry-on-Water dryer at the Food Pilot, a joint venture of Flanders' Food and ILVO. Defendants' misuse of Plaintiffs' trade secrets is continuing, and poses the additional threat of unauthorized disclosure and use of Plaintiffs' trade secrets by others.

54.    Plaintiffs' trade secrets derive independent economic value, actual or potential, from not being generally known to the public or other entities and persons such as the Defendants, who can obtain value from their disclosure or use. Plaintiffs' knowledge and use of these trade secrets provides Plaintiffs with competitive advantages over those who do not know them. Plaintiffs' trade secrets are not matters of general knowledge in the field of food drying.

55.    Plaintiffs have made, and continue to make, efforts that are reasonable under the circumstances to protect the secrecy of their trade secrets by, among other things, requiring their employees to execute non-disclosure agreements, and by restricting access to trade secret information to employees on a need-to-know basis, and to customers or potential customers only upon their agreement to keep such information confidential.

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

56.     Defendants' misuse of Plaintiffs' trade secrets, unless and until enjoined and restrained by this Court, will greatly and irreparably injure Plaintiffs. On information and belief, if Defendants are not enjoined, Defendants will continue to misappropriate and use Plaintiffs' trade secret information for their own benefit and to Plaintiffs' detriment.

57.     Plaintiffs have no adequate remedy at law for the present and threatened future injuries being caused by Defendants. Defendants' misuse of Plaintiffs' trade secrets has allowed Defendants to obtain an improper head start in creating their dryer based on Plaintiffs' decades of research and development. This head start allowed Defendants to quickly bring to market a competing, copycat product while saving the substantial costs of developing their own technology. Plaintiffs, therefore, are entitled to injunctive relief prohibiting Defendants from further misuse or disclosure of Plaintiffs' trade secrets, and information derived therefrom, in any services and products being sold or offered for sale, to compel Defendants to return all materials incorporating, disclosing, or derived from Plaintiffs' trade secrets, and to prevent Defendants from further capitalizing on their ill-gotten gains.

58.     Plaintiffs are entitled to damages for the actual loss caused by Defendants' misappropriation of Plaintiffs' trade secrets, and for any unjust enrichment Defendants have enjoyed by such misappropriation.

59.     Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious. California Civil Code sections 3426.3(c) and 3426.4 thus entitle Plaintiffs to an award of exemplary damages, as well as Plaintiffs' reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### (Breach of Contract against ILVO)

60.     Plaintiffs incorporate all of the above paragraphs as though set forth herein.

61.     The 2011 NDA is a valid and enforceable contract, according to which Plaintiffs have performed all conditions, covenants, and promises. Plaintiffs discovered the breach on or about January 2017.

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

1    62.    Through the acts described above, ILVO has materially breached the 2011

2    NDA, which protects from disclosure, and limits the use of, MCD's confidential

3    information by, among other things, using Plaintiffs' confidential information to develop

4    their Dry-on-Water technology.

5    63.    Plaintiffs are entitled to consequential damages for ILVO's willful

6    misconduct and breach of confidentiality.

7    64.    Plaintiffs have incurred substantial costs as a proximate result of ILVO's

8    breach of its material obligations under the 2011 NDA and are entitled to damages,

9    including but not limited to those relating to security and investigation costs.

10                              **THIRD CAUSE OF ACTION**

11                            **(Breach of Contract against ILVO)**

12    65.    Plaintiffs incorporate all of the above paragraphs as though set forth herein.

13    66.    The 2015 NDA is a valid and enforceable contract, according to which

14    Plaintiffs have performed all conditions, covenants, and promises. Plaintiffs discovered the

15    breach on or about January 2017.

16    67.    Through the acts described above, ILVO has materially breached the 2015

17    NDA, which protects from disclosure, and limits the use of, G3's confidential information,

18    at least by inducing G3 to submit to the ETV process with the false assurance that ILVO

19    had no intention of developing a competing product, and by misusing G3's confidential

20    information to further develop and market ILVO's Dry-on-Water product.

21    68.    Plaintiffs are entitled to consequential damages for ILVO's willful

22    misconduct and breach of confidentiality.

23    69.    Plaintiffs have incurred substantial costs as a proximate result of ILVO's

24    breach of its material obligations under the 2015 NDA and are entitled to damages,

25    including but not limited to those relating to security and investigation costs.

26

27

28

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

1

## FOURTH CAUSE OF ACTION

2

### (Unfair Competition under California Business and Professions Code section 17200 against all Defendants)

3

4       70.     Plaintiffs incorporate all of the above paragraphs as though set forth herein.

5       71.     Separate from its actions related to the misappropriation of Plaintiffs trade

6   secrets, ILVO represented to G3 that it had no commercial interest in refractance window

7   dryer technology and that it would collaborate with G3 if it later sold refractance window

8   dryers in Europe, when in fact ILVO had a competing product in development for at least

9   two years when it first approach G3 about ETV.

10      72.     ILVO's competitive practice is unfair because it is unethical, oppressive and

11  unscrupulous. In reliance on ILVO's assurances that it was not intending to develop a

12  competing product, G3 submitted to the ETV process. Instead of collaborating with G3 to

13  sell refractance window dryers in the European market, G3 is now informed and believes

14  that ILVO seeks to use the ETV G3 obtained to market the Dry-on-Water products. ILVO

15  misled G3 into obtaining ETV because the G3 refractance window dryers were fully

16  developed and commercially proven, while ILVO would be unable to enter into a license

17  agreement with a manufacturing partner, until it obtained ETV certification. On

18  information and belief, ILVO would have not been able to obtain the ETV certification

19  without access to G3's refractance window dryer. ILVO thus deceived G3 into providing it

20  with a free ETV for its competing product that is itself a copycat of G3's refractance

21  window dryers. Plaintiffs are entitled to damages from Flanders' Food because of its

22  participation in the Food Pilot joint venture with ILVO.

## PRAYER FOR RELIEF

23      WHEREFORE, in light of the foregoing, Plaintiffs pray for judgment as follows:

24      A.      A judgment that Defendants, and each of them, are liable on all causes of

25  action alleged herein;

26      B.      Damages for actual loss and unjust enrichment;

27      C.      Pre- and post-judgment interest;

28

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

---

COMPLAINT                               21                          Case No. 17-cv-469

1       D.      Exemplary and punitive damages;

2       E.      Attorney fees and costs incurred by Plaintiffs in bringing and litigating this action;

F.      Preliminary and permanent injunctive relief to which Defendants, and each of them, and their employees or representatives, and all persons acting in concert or participating with them are ordered, enjoined, restrained, directly or indirectly, by any means whatsoever, as follows:

      i.      From offering to sell or selling any products or services that utilize, embody, or were developed using Plaintiffs' trade secrets or other valuable intellectual property and business information;

      ii.      From disclosing or using Plaintiffs' trade secrets and other valuable intellectual property and business information;

      iii.      From utilizing products or processes that were derived from or embody Plaintiffs' trade secrets;

      iv.      Immediately to preserve and return to Plaintiffs (1) all copies of Plaintiffs' documents and information, including without limitation any trade secret and other intellectual property or business information acquired from any Plaintiff; and (2) all copies of all materials (in paper, electronic, or any other form) containing any, or derived from any of Plaintiffs' information, trade secrets, or other intellectual property or business information; and

      v.      To turn over to the Court any proceeds they have obtained from the misappropriation of Plaintiffs' trade secrets and other valuable intellectual property and business information, which proceeds will be held in constructive trust until the conclusion of this litigation;

      G.      Reasonable royalties;

      H.      Costs of court; and

      I.      All such other relief that the Court deems just and proper.

STEPTOE & JOHNSON LLP
1891 Page Mill Rd., Ste. 200
Palo Alto, CA 94304

1

## DEMAND FOR A TRIAL BY JURY

2        Plaintiffs hereby demand a trial by jury for all causes of action, claims, or issues in

3  this action which are triable as a matter of right to a jury.

4

5                                Respectfully submitted,

6  Dated: June 15, 2017             STEPTOE & JOHNSON LLP

7

8                         By:   */Sanjeet K. Dutta/*
                                     Sanjeet K. Dutta

9

10                             *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STEPTOE & JOHNSON LLP**
**1891 Page Mill Rd., Ste. 200**
**Palo Alto, CA 94304**