UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. & J. GALLO WINERY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INSTITUUT VOOR LANDBOUW – EN VISSERIJONDERZOEK, et al.,<br><br>Defendants. | No. 1:17-cv-00808-DAD-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 27) |

This matter is before the court on defendants' motion to dismiss the complaint. (Doc. No. 27.) A hearing on the motion was held on December 5, 2017. Attorneys William F. Abrams, Sanjeet K. Dutta, Jamie L. Lucia, and D. Greg Durbin appeared on behalf of plaintiffs E. & J. Gallo Winery, G3 Enterprises, Inc., and MCD Technologies, Inc. Attorney Matthew M. Werdegar appeared on behalf of defendants Instituut Voor Landbouw - En Visserijonderzoek and Eigen Vermogen Vh Instituut Voor Landbouw - En Visserijonderzoek (individually and collectively, "ILVO"). Having reviewed the parties' briefing and heard oral argument, and for the reasons that follow, defendants' motion to dismiss will be granted in part and denied in part.

**BACKGROUND**

In their complaint, plaintiffs allege as follows. Over the course of several decades, workers employed by plaintiff MCD Technologies, Inc. ("MCD") developed a machine known as

1

the Refractance Window dryer (the "RW dryer"). (Doc. No. 1 (Compl.) at ¶¶ 1–3.) The RW dryer allows for fast and efficient drying of organic food products—such as fruits, vegetables, and algae—to make colorants and nutraceutical products without compromising the dried product's color, flavor, or active ingredients. (*Id.* at ¶ 1.) The product operates by moving the food products along a conveyor belt which floats on a pool of hot water. (*Id.* at ¶ 2.) The resulting dried food product is stable, has a long shelf life, and is both more energy and cost efficient than other forms of drying, such as freeze-drying or spray-drying. (*Id.*)

In or about 2011, defendants contacted plaintiff MCD to express interest in purchasing one of these RW dryers. (*Id.* at ¶ 4.) Defendants presented themselves to plaintiff MCD as a research institute, not a commercial concern, and requested a demonstration of the RW dryer. (*Id.*) After the parties executed a non-disclosure agreement (the "2011 NDA"), plaintiff MCD shared their trade secrets, intellectual property, and business information regarding refractance window drying technology with Domien De Paepe ("De Paepe"), an individual employed by defendants. (*Id.*) This confidential information included, but was not limited to, trade secret information relating to how to assemble the belt of the refractance window dryer, the design of the exhaust system for evacuating water vapor produced during the drying process, the design for recirculating water through the system, designs for belt sanitation, a system for dried product removal, a system for liquid product feeding, and the design and choices of materials for the belt. (*Id.*) Plaintiffs allege that these trade secrets are different than the information disclosed in plaintiffs' patents, which are publicly available. (*Id.* at ¶ 5.) Plaintiffs also allege that the combination of the trade secrets, intellectual property, and business information amount to an additional, "compilation" trade secret, which revealed to defendants how to design, build, and maintain a commercial RW dryer. (*Id.* at ¶ 6.) Ultimately, defendants did not purchase a RW dryer from plaintiff MCD. Instead, plaintiffs are informed that defendants began developing a copy of the RW dryer using plaintiffs' trade secrets without paying for such use. (*Id.* at ¶ 7.)

In 2012, plaintiff E. & J. Gallo Winery ("Gallo"), doing business as San Joaquin Valley Concentrates ("SJVC"), acquired MCD's RW dryer business. (*Id.* at ¶ 8.) Plaintiff SJVC, in turn, licensed the RW dryer technology to plaintiff G3 Enterprises Inc., doing business as

2

Delaware G3 Enterprises Inc. ("G3"). (*Id.*) G3 manufactures and sells commercial RW dryers based on plaintiff MCD's technology.[1] (*Id.*)

In 2015, defendants contacted plaintiff G3 and urged it to obtain an "Environmental Technology Verification" ("ETV"), a program developed by the European Commission to verify the energy efficiency of new, environmentally-friendly technologies in order to facilitate the technology's acceptance in the European marketplace. (*Id.* at ¶ 9.) In so doing, defendants assured plaintiff G3 that they were not developing a competing RW dryer product. (*Id.*) In reliance on that assurance, plaintiff G3 obtained the ETV, during which it signed a mutual non-disclosure agreement with defendants and the testing entity (the "2015 NDA"). (*Id.*)

In late 2016, defendants publicly announced they had produced a working prototype dryer, known as the "Dry-on-Water" dryer, and that Constructie Spiessens NV, doing business as Spiessens Machinebouw ("Spiessens"), would be the exclusive manufacturer of these "Dry-on-Water" dryers. (*Id.* at ¶ 10.) Plaintiffs allege on information and belief that defendants receive royalties and possibly other considerations from Spiessens as a result of this arrangement. (*Id.*) As such, plaintiffs fully expect defendants and Spiessens to continue marketing their commercial dryers to plaintiffs' current and future customers, making them plaintiffs' market competitors. (*Id.*)

Based upon these allegations, plaintiffs bring four causes of action. First, they assert that defendants violated California Civil Code §§ 3426 *et seq.*, which prohibits the misappropriation of trade secrets. (*Id.* at ¶¶ 50–59.) Second, plaintiffs allege breach of contract as to the 2011 NDA between the parties. (*Id.* at ¶¶ 60–64.) Third, plaintiffs allege breach of contract as to the 2015 NDA between the parties. (*Id.* at ¶¶ 65–69.) Fourth, plaintiffs allege unfair competition in violation of California Business and Professions Code § 17200.

/////

---

[1] In their complaint, plaintiffs allege that SJVC manufactures and sells "commercial GW Dryers," as opposed to RW dryers. (Compl. at ¶ 8.) Plaintiffs allege elsewhere in their complaint that GW dryers are "a version of the refractance window dryer," thereby suggesting that any difference between RW dryers and GW dryers is immaterial. (*Id.* at ¶ 3.) For the sake of consistency and only for purposes of resolving the pending motion, the court will refer to all similar products as "RW dryers."

3

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

Defendants argue that all four causes of action set forth in plaintiff's complaint must be dismissed. The court addresses each of these arguments in turn below.

/////

**A.     Trade Secret Misappropriation**

To state a valid claim under the California Uniform Trade Secrets Act ("CUTSA"), plaintiffs must allege facts establishing that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Cytodyn, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008). Defendants argue that plaintiffs' complaint is deficient with respect to all three elements of a misappropriation of trade secret claim.

       1.     Ownership of Trade Secrets

Defendants contend that plaintiffs' complaint "merely lists broad, generic categories of information to which its purported trade secrets allegedly relate," and therefore fails to state a plausible claim for relief because it does not state with sufficient particularity which trade secrets are at issue. (Doc. No. 27 at 12) Because of this, defendants argue, the complaint does not adequately allege ownership of any trade secrets.

Under California law, a trade secret is defined to mean

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1. To plausibly allege ownership of a trade secret, "the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *TMC Aerospace, Inc. v. Ebit Systems of America LLC,* No. CV 15-07595-AB (Ex), 2016 WL 3475322, at *4 (C.D. Cal. Jan. 29, 2016) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)); *see also Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009). If the trade secret concerns a manufacturing process, the plaintiff must also "supply sufficient data concerning the process, without revealing the details of it, to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide

reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes, Inc.*, 260 Cal. App. 2d at 253; *see also Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-cv-02965 SC, 2013 WL 5770542, at *5 n.1 (N.D. Cal. Oct. 24, 2013) (citations omitted) ("[F]ederal courts in the Ninth Circuit look to *Diodes* for guidance on the applicable pleading standard for claims brought under the CUTSA."). A plaintiff in a trade secret case need not lay out "every minute detail of its claimed trade secret at the outset of the litigation." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (stressing that a reasonable doubt as to the adequacy of the description is to be resolved in favor of allowing discovery to proceed); *see also TMC Aerospace*, 2016 WL 3475322, at *4-5. However, the complaint must do more than describe the subject matter of the trade secrets in a "vague and conclusory" manner. *Bladeroom Grp. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015); *see also Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (noting that a trade secret must be defined with sufficient particularity to put the opposing party "on notice of what [plaintiff] claims is a trade secret").

The RW dryer technology does not appear to the court to involve a particularly specialized technical field. Rather, in their complaint plaintiffs describe in a straightforward fashion the subject matter of the alleged trade secrets at issue in this action as follows:

> (1) How to assemble the refractance window dryer's belt; (2) Design of the exhaust system for evacuating water vapor produced during the drying process; (3) Design for recirculating water through the system; (4) Designs for belt sanitation; (5) System for dried product removal; (6) System for liquid product feeding; (7) Design and materials choices for the belt; and (8) Compilation of all trade secrets above combined with patented technology and business information.

(Doc. No. 31 at 10.) Employing the legal framework discussed above, the court concludes that plaintiffs have provided sufficient specificity in the allegations of their complaint to allow defendants "to be on notice of what trade secrets are at issue." *Synopsys*, 2013 WL 5770542, at *6. Plaintiffs' descriptions of their trade secrets relate to specific parts of the RW dryer's design, or otherwise delineate methods of operating the RW dryer. (*See, e.g.*, Compl. at ¶ 4.) Because plaintiffs have precisely identified in their complaint what parts of the RW dryer the alleged trade

secrets cover, plaintiffs have set forth adequate allegations permitting defendants to ascertain "the boundaries within which the secret lies." *Agency Solutions.Com, LLC v. TriZetto Grp.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) (quoting *Diodes*, 260 Cal. App. 2d at 253)); *see also Netlist v. SMART Storage Sys., Inc.*, 2014 WL 4380760, at *5 (N.D. Cal. Sept. 4, 2014).[2]

In this regard, the court notes that plaintiffs' complaint provide far more detailed factual allegations with respect to the trade secrets at issue than those complaints that have been found inadequately pled. For instance, in *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (*Space Data I*), the plaintiff weather balloon company brought an action alleging, among other things, that the defendants had misappropriated its trade secrets. In the complaint, Space Data identified the trade secrets at issue only by vaguely alleging that they involved "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers." *Id*. In granting the defendants' motion to dismiss in that case, the court found that this "high-level overview" of plaintiff's purported trade secrets was too vague to support a trade secret misappropriation claim in that it failed to give the court or defendants notice of the boundaries of the case. *Id*.

The allegations of the complaint in *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-cv-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) were similarly vague. There, the plaintiff

---

[2] As both parties acknowledge, California law requires plaintiffs in a CUTSA action to "identify the trade secret with reasonable particularity" prior to the commencement of discovery. Cal. Civ. P. Code § 2019.210. However, disclosure under that provision is a matter for discovery, and "is an issue separate from [plaintiffs'] motion to dismiss." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017) (*Space Data II*); *see also New Show Studios LLC v. Needle*, No. 2:14-cv-01250-CAS(MRWx), 2014 WL 2988271 (C.D. Cal. June 30, 2014) (citing *Meggitt v. San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. App'x 801 (9th Cir. 2014)) ("Ninth Circuit case law . . . has made clear that, even assuming § 2019.210 governs actions in federal court, the statute does not provide grounds for dismissing a trade secret claim at the pleading stage."). *Contra Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4 (N.D. Cal. Apr. 13, 2015) ("To pass muster under Rule 8, plaintiffs raising claims under CUTSA must itemize the information claimed as a trade secret with reasonable particularity"). The court respectfully disagrees with the holding in *Top Agent Network*, and is persuaded by the Ninth Circuit's analysis in *Meggitt*. The text of § 2019.210 requires only that the trade secrets be identified "prior to discovery," and does not state that it must be filed concurrently with a motion to dismiss. Moreover, § 2019.210 is contained within Title 4 of the California Code of Civil Procedure, entitled "The Civil Discovery Act." Therefore, the court finds that application of § 2019.210 is not relevant to the instant motion.

electronic design automation company alleged the defendant tool developer copied portions of its software and documentation and stole other propriety documentation from it while the parties were operating under a Connections Program License Agreement which subsequently expired. 2013 WL 5770542, at *2. However, in its complaint plaintiff failed to allege with any specificity what defendant allegedly copied, but rather simply alleged that defendant "had access to, copied, and prepared derivative works based on the Copyrighted Software, in contravention of the [Connections Program License Agreement]." *Id*. at *4. The district court therefore dismissed plaintiff's copyright claims, concluding that it had failed to plead non-speculative facts about what defendant had infringed and how. *Id.* Of more significance in resolving the pending motion, as to its trade secret misappropriation claim, plaintiff alleged that the trade secrets at issue had been copied and misappropriated by defendant and related to three of plaintiff's products but also referred to plaintiff's publicly available patents improperly as trade secrets. *Id.* at *6. In dismissing the plaintiff's trade secret misappropriation claim, the court found the complaint's description of alleged trade secrets to be "too sweeping and vague for Defendant to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie." *Id*.

In contrast to the allegations addressed by the courts in *Space Data I* and *Synopsys*, plaintiffs in this case have alleged that the trade secrets concern the design of specific parts of a specific machine. (*See, e.g.*, Compl. at ¶ 4) (alleging that the trade secrets include "the design of the exhaust system for evacuating water vapor produced during the drying process"). This allegation is sufficiently specific to allege ownership of a trade secret. *See Diodes*, 260 Cal. App. 2d at 253 (requiring plaintiff only "to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery"); *Netlist*, 2014 WL 4380760, at *5 ("Netlist's SAC, coupled with its Amended Trade Secret Disclosure describe the trade secrets and alleged misappropriation with sufficient specificity. Nothing more must be alleged to avoid dismissal at the pleading stage.") Indeed, the court does not know what more could reasonably be alleged in this regard and is convinced that the allegations of the complaint in support of the plaintiffs' trade

8

secret misappropriation claim provide defendants with reasonable notice of the issues which must be met at trial as well as reasonable guidance as to the scope of appropriate discovery prior thereto.

Defendants also advance a slightly different argument, namely that plaintiffs' alleged trade secrets "directly overlap with the categories of information described in MCD's and G3's patents and published patent applications." (Doc. No. 27 at 14.) That is, even if the alleged trade secrets are described in sufficient detail in plaintiffs' complaint, it is impossible for the court or defendants to discern if any of plaintiffs' alleged trade secrets are publicly known.

Under California law, "[i]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (quoting *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995)); *see also Bladeroom*, 2015 WL 8028294, at *4.

The court concludes that the issue of whether all of plaintiffs' alleged trade secrets have been publicly disclosed is a factual issue which is properly the subject of discovery. As stated above, plaintiffs' complaint contains sufficient factual allegations to plausibly allege the existence of the trade secrets. In arguing that plaintiffs have not affirmatively distinguished their alleged trade secrets from public information, defendants effectively ask the court to conduct a review of the evidence to determine whether plaintiffs' trade secrets have been made public. This sort of review is more appropriate on a motion for summary judgment. *See Ultimax Cement Mfg. Corp.*, 587 F.3d at 1355–56; *W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 899–900 (D. Ariz. 2012); *Spring Design, Inc. v. Barnesandnoble.com, LLC*, No. C 09-05185 JW, 2010 WL 5422556, at *4–5 (N.D. Cal. Dec. 27, 2010); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528–29 (N.D. Cal. 2000).

The decision in *Bladeroom*, upon which defendants rely, does not alter this conclusion. In that case, plaintiffs admitted that certain aspects of the alleged trade secret were publicly known.

9

*Bladeroom*, 2015 WL 8028294, at *4. Because there was no factual dispute that parts of the alleged trade secret had previously been made public, the district court properly held that those parts "cannot be protected under CUTSA as a trade secret." *Id.* Here, by contrast, plaintiffs vigorously dispute the notion that their trade secrets have been publicly disclosed. (Doc. No. 31 at 13–15.) In short, plaintiffs' complaint plausibly alleges ownership of trade secrets.

### 2. Misappropriation

Next, defendants claim that plaintiffs' complaint is insufficient with respect to the second prong of a trade secret misappropriation claim because it fails to adequately allege that defendants engaged in misappropriation. "Under the California Uniform Trade Secret Act, misappropriation can be established through wrongful acquisition or use without consent." *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015). Here, because defendants were allegedly given access to plaintiffs' trade secrets pursuant to a non-disclosure agreement, plaintiffs must plead facts which, if proven to be true, would show that the defendant used the information in a manner not authorized by the parties' agreement. *See TMC Aerospace*, 2016 WL 3475322, at *6.

Defendants argue that merely alleging similarity between two products, without more, is insufficient to support a claim of misappropriation. (Doc. No. 27 at 19) (citing *Brown v. Adidas Int'l*, 938 F. Supp. 628, 634 (S.D. Cal. 1996)). Here, however, plaintiffs have gone well beyond that in alleging facts in support of their misappropriation claim. Although not required to do so, plaintiffs have alleged "exactly how Defendants improperly obtained . . . the alleged trade secret." *Autodesk*, 2015 WL 2265479, at *6 (internal quotation marks and citation omitted). In their complaint plaintiffs allege that defendants' employee De Paepe

> visited MCD's Tacoma facility. There, [MCD employee] Magoon showed him both a working pilot refractance window dryer and a commercial Model 1 RW Dryer that MCD maintained on site for demonstration purposes. MCD gave De Paepe detailed presentations on how the technology operated, answering every question that De Paepe asked because Magoon believed ILVO was a potential customer and he wanted to make the sale. In light of the 2011 NDA, Magoon trusted that De Paepe, ILVO, and VITO would not misuse any information he shared.

/////

10

(Compl. at ¶ 30.) Such allegations contrast with those made in cases relied upon by defendants, in which the plaintiffs made only conclusory allegations as to misappropriation. *See Pellerin*, 877 F. Supp. 2d at 989 ("Honeywell does not allege any facts in support of the legal conclusion that Plaintiffs 'used and/or disclosed' and 'acquired and/or used' Honeywell's trade secrets or confidential information."); *TMC Aerospace*, 2016 WL 3475322, at *6.

In addition, plaintiffs' complaint provides "other circumstantial allegations" that their trade secrets were misappropriated. *See SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10-CV-01773-LHK, 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010). For instance, plaintiffs have alleged that soon after De Paepe's visit to plaintiff MCD, "ILVO began developing a copy of the refractance window dryer using the Plaintiffs' technology." (Compl. at ¶ 7.) In support of this allegation, plaintiffs direct the court to a 2016 press release by defendants, stating that ILVO's dryer was completed after "four years" of development. (Doc. No. 1-1 at 2.) In short, plaintiffs have alleged facts that, if proven, would show: (1) defendants obtained access to plaintiffs' trade secrets in 2011; (2) those trade secrets concerned the design of the RW dryer; and (3) defendants began designing their own (allegedly identical) dryer in 2012, one year after obtaining those trade secrets. Plaintiffs have therefore plausibly alleged that defendants misappropriated their trade secrets.

3. <u>Damage to Plaintiffs</u>

Next, defendants argue that plaintiff MCD cannot state a claim for trade secret misappropriation because it has suffered no damages. In order to satisfy the third element of a trade secret misappropriation claim, a plaintiff must plead facts showing that "misappropriation caused damage to the plaintiff." *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2014 WL 721844, at *3 (N.D. Cal. Feb. 24, 2014), *aff'd in part, vacated in part, rev'd in part on other grounds*, 675 Fed. App'x 700 (9th Cir. 2017); *see also Jasmine Networks, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 996 (2009) (noting in a trade secret case that "if [plaintiff] sold the property for the same value it would have had in the absence of the defendant's conduct, and if he himself has not been sued by the purchaser, he is unlikely to establish any compensable harm"). Defendants point out that plaintiff MCD sold its RW dryer business, including all of its

11

intellectual property, to SJVC in 2012. (Doc. No. 27 at 21 (citing Compl. at ¶ 32.).) As such, defendants persuasively argue that any damage that might occur as a result of defendants' developing a rival dryer would not accrue to plaintiff MCD, since they no longer have any stake in the RW dryer business.

Plaintiff MCD has not plausibly alleged that it has suffered any damages as a result of defendants' alleged conduct. Plaintiff MCD divested itself of all interest in the RW dryer business well before defendants allegedly took any action with respect to plaintiffs' trade secrets. Even if defendants are currently using the alleged trade secrets to sell a rival RW dryer, the resulting harm would accrue only to plaintiffs Gallo and G3, the respective owner and licensee of the RW dryer business. The complaint in this action has alleged no facts to support its statement that defendants' actions damaged MCD.[3] Accordingly, the court will dismiss plaintiff MCD's trade secret misappropriation claim for failure to allege any damage. Moreover, the court finds that plaintiff MCD's failure to allege any damages is also fatal to its breach of contract claim and its claim under California Business and Professions Code § 17200, since these claims also require a plausible allegation of damages. The court will therefore dismiss all claims brought by plaintiff MCD.[4]

---

[3] Defendants persuasively argue that the reasoning of the case relied upon by plaintiffs, *VasoNova, Inc. v. Grunwald*, No. C 12-02422 WHA, 2012 WL 6161041 (N.D. Cal. Dec. 11, 2012), must be rejected. The court in *VasoNova* stated that "[a] plaintiff's allegation that he has, as a 'direct and proximate result' of defendant's violation, 'sustained special and general damages' suffices to withstand a Rule 12(b)(6) motion." *Id.* at *4 (citing *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996)). The decision in *Jenkins* predates *Twombly* and *Iqbal*, and this court is persuaded that such a conclusory allegation is not sufficient to adequately plead damages in the present case. *See Schwartz v. IndyMac Fed. Bank*, No. 2:10-CV-00516-WBS-JFM, 2010 WL 2985480, at *3 (E.D. Cal. July 27, 2010).

[4] The court notes that plaintiffs have advanced alternative legal theories as to how plaintiff MCD has suffered damages. For instance, in their opposition brief plaintiffs argue that their trade secret claim may move forward based on a theory of unjust enrichment. (Doc. No. 31 at 18.) However, plaintiffs point to no factual allegations in their complaint that could support such a theory, apart from the conclusory assertion that "Plaintiffs are entitled to . . . any unjust enrichment Defendants have enjoyed" as a result of their misrepresentation. (Compl. at ¶ 58.) Although the court finds that such allegations of the present complaint are insufficient, the court will grant plaintiffs leave to amend to afford them an opportunity to allege facts in support of a plausible theory as to why plaintiff MCD is entitled to any recovery in this action. *See* Cal. Civ. Code § 3426.3 (permitting a complainant to recover for unjust enrichment caused by misappropriation).

1 As to all other plaintiffs, however, defendants' motion to dismiss the trade secret claim will be denied.

**B. Breach of Contract**

Defendants next contend that both of plaintiffs' breach of contract claims must be dismissed. With respect to these claims plaintiffs allege that defendants were bound by the 2011 and 2015 NDAs and that defendants' actions since that time amount to a material breach of those NDAs. To state a claim for breach of written contract, a plaintiff must plead facts establishing: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Defendants contend that "Gallo does not plead any facts that show that ILVO breached the parties' NDAs by misusing Gallo's purported trade secrets." (Doc. No. 27 at 22.) Plaintiffs, by contrast, contend that they have described the terms of the NDA with sufficient detail, and have also provided facts in alleging that defendants' conduct was inconsistent with those terms.

The court finds that plaintiffs have alleged sufficient facts to state a claim for breach of contract. First, with respect to the 2011 NDA, plaintiffs have alleged that "G3 executed a non-disclosure agreement with ILVO [that] . . . prohibited the parties from using the confidential information" except under specified conditions. (Compl. at ¶ 30.) Second, the complaint alleges facts showing that plaintiffs performed as required under the contract, for instance by giving "De Paepe detailed presentations on how the technology operated." (*Id.*) Third, plaintiffs allege that defendants breached the contract by using the confidential information in a manner prohibited by the contract, specifically to develop a competing RW dryer. (*Id.* at ¶¶ 31, 44.) Fourth, plaintiffs allege that as a result of the breach, they have incurred "security and investigation costs," thereby entitling them to the award of damages. (*Id.* at ¶ 64.)

Turning next to the 2015 NDA, plaintiffs first allege in their complaint that in December 2015, plaintiff G3 and defendants executed a non-disclosure agreement prohibiting the parties from using the confidential information for any purpose other than allowing defendants to perform an ETV. (*Id.* at ¶ 41.) Second, plaintiffs allege that plaintiff G3 performed all conditions

13

under the contract by permitting representatives from the ETV testing company to perform tests on its RW dryer. (*Id.* at ¶ 42.) Third, plaintiffs claim that contrary to the agreement, defendants breached the contract by disclosing the confidential information to Spiessens for the purpose of creating a rival product. (*Id.* at ¶¶ 42, 67.) Finally, plaintiffs allege that as a result of the breach, they have incurred "security and investigation costs," thereby entitling them to the award of damages. (*Id.* at ¶ 64.) These allegations are sufficient to state a breach of contract claim.

Defendants argue, however, that some of the plaintiffs lack standing to assert a claim for breach of contract. For instance, defendants contend that because MCD is the only plaintiff who was a party to the 2011 NDA, only plaintiff MCD may sue to enforce that breach. Similarly, because G3 is the only plaintiff who was a party to the 2015 NDA, only G3 may enforce that breach. *See Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988) ("Someone who is not a party to the contract has no standing to enforce the contract."); Cal. Jur. 3d Contracts § 391 (2014) ("A person who is not a party or privy to a contract cannot show a wrong done to him or her for breach of any duty arising out of the contractual relation."); *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2016 WL 3345464, at * 14 (N.D. Cal. June 16, 2016). Plaintiffs object to the dismissal of the breach of contract claims as to these plaintiffs who were not parties to the particular agreements on the ground that the "damages allegations include allegations of consequential damages, including costs of security and investigation costs, which are not limited to a specific plaintiff." (Doc. No. 31 at 22.)

Adoption of plaintiffs' position would confuse the standing inquiry with a damages analysis. Plaintiffs' complaint does not allege that Gallo or G3 were assigned MCD's rights under the 2011 NDA, nor does it allege that they were intended third-party beneficiaries. Similarly, the complaint does not allege that any plaintiff other than G3 possesses any rights under the 2015 NDA, or that another plaintiff was an intended third-party beneficiary. It is therefore immaterial whether those other parties suffered damages, since under California law they lack standing to enforce the contract. Applying the rule in *Hatchwell*, the court concludes that only plaintiff MCD has standing to state a claim for breach of the 2011 NDA (count two), and only plaintiff G3 has standing to state a claim for breach of the 2015 NDA (count three). As

stated above, however, plaintiff MCD has failed to plausibly allege how it has suffered damages in this case. Accordingly, the second cause of action relating to the 2011 NDA will be dismissed in its entirety. The third cause of action will be dismissed as to plaintiffs MCD and Gallo.

**C.     Unfair Competition**

Finally, defendants claim that plaintiffs' fourth cause of action must be dismissed for lack of standing. Plaintiffs fourth cause of actions asserts that defendants violated California Business & Professions Code § 17200 by misleading G3 into believing that defendants would not make a competing commercial dryer, or alternatively that defendants would collaborate with G3 in the event defendants chose to do so. (*Id.* at 25.)

To establish standing under California's unfair competition law ("UCL"), a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *see also Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1048 (9th Cir. 2017); *Ivanoff v. Bank of Am., N.A.*, 9 Cal. App. 5th 719, 731 (2017).

Here, plaintiffs allege in the context of their breach of contract actions that they have incurred "security and investigation costs" as a result of defendants' alleged actions. (Doc. No. 1 at ¶¶ 64, 69.) Defendants do not challenge these allegations as insufficient. Such damages, if proven, would constitute "loss by the plaintiff," not merely "gain by the defendant." *Kwikset*, 51 Cal. 4th at 336; *see also JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *4 (N.D. Cal. June 12, 2017) ("A UCL plaintiff must allege that it has suffered injury in fact, and not just possible future injury."). This allegation of plaintiffs' complaint is sufficient to claim a loss of money and to satisfy the economic injury requirement of a UCL claim under California law. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1331 (C.D. Cal. 2013) ("Since plaintiffs allegedly incurred concrete financial losses in the form of ascertainable out-of-pocket damages, the court concludes that they have demonstrated injury-in-fact under the UCL."). In addition, plaintiffs allege that as a result of their actions, defendants "receive royalties and possibly other consideration from Spiessens" due to the

licensing of their rival RW dryer to Spiessens.  (Compl. at ¶ 10.)  The court finds that such facts, if proven, could also support a finding of economic injury, since defendants would have received an economic gain that rightfully belonged to plaintiffs.  *See Kwikset*, 51 Cal. 4th at 323 (noting that a plaintiff has suffered economic injury if he or she has been "deprived of money or property to which he or she has a cognizable claim"); *see also BizCloud, Inc. v. Comput. Scis. Corp.*, No. C-13-05999 JCS, 2014 WL 1724762, at *4 (N.D. Cal. Apr. 29, 2014) ("[L]ost royalty payments constitute money to which [plaintiff] has a cognizable claim, which is sufficient to establish standing under the UCL.").  Although, as noted above, the court will dismiss the UCL claim brought by plaintiff MCD, defendants' motion to dismiss the fourth cause of action is otherwise denied.

## CONCLUSION

For these reasons,

1. Defendants' motion to dismiss (Doc. No. 27) is granted in part and denied in part;
2. Plaintiffs' first cause of action is dismissed as to plaintiff MCD;
3. Plaintiffs' second cause of action is dismissed;
4. Plaintiffs' third cause of action is dismissed as to plaintiffs MCD and Gallo;
5. Plaintiffs' fourth cause of action is dismissed as to plaintiff MCD; and
6. If plaintiffs wish to attempt to amend their complaint to cure any of the deficiencies identified above, they are directed to file and serve any amended complaint no later than thirty days from the issuance of this order.

IT IS SO ORDERED.

Dated: **June 1, 2018**

UNITED STATES DISTRICT JUDGE